UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA          *     Case No. 13-CR-173 (JBW)
                                  *
                                  *     Brooklyn, New York
                                  *     October 14, 2014
        v.                        *
                                  *
DARNELL WASHINGTON,               *
                                  *
                Defendant.        *
                                  *
    *  *  *  *  *  *  *  *  *  *  *  *  *  *

                TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
                BEFORE THE HONORABLE RAMON E. REYES, JR.
                     UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:               ERIK D. PAULSEN, ESQ.
                                  Asst. United States Attorney
                                  United States Attorney's Office
                                  271 Cadman Plaza East
                                  Brooklyn, NY 112010


For the Defendant:                LISA HOYES, ESQ.
                                  DOUGLAS MORRIS, ESQ.
                                  Federal Defenders of
                                    New York, Inc.
                                  One Pierrepoint Plaza, 16th Fl.
                                  Brooklyn, NY  11201




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1          (Proceedings commenced at 3:19 p.m.)

2               THE CLERK:  Criminal cause for pleading, docket

3     number 2013-CR-173, *U.S.A. versus Washington*.

4               Counsel for the government, please state your name

5     for the record.

6               MR. PAULSEN:  Good afternoon, Your Honor.  Erik

7     Paulsen for the United States government.

8               THE CLERK:  Counsel for the defendant?

9               MS. HOYES:  For Mr. Washington, Federal Defenders,

10    by Lisa Hoyes.  Also present is Douglas Morris.

11              THE COURT:  Good afternoon.  Please be seated.

12              Mr. Washington, I'm advised by your attorney that

13    you wish to waive indictment and plead guilty to the

14    superceding information that's been filed against you.  Is

15    that correct?

16              THE DEFENDANT:  Yes, sir.

17              THE COURT:  Okay.  This is a serious decision and

18    I'll have to make sure that you understand all of your rights

19    and the consequences of your plea.

20              To do that, I'll -- to do that, I'll have to ask

21    you some questions and that will require that your answers be

22    made under oath.  So please stand up and raise your right

23    hand.

24         (The defendant is sworn.)

25              THE COURT:  All right.  Please be seated.

3

1          Do you understand, Mr. Washington, that having been

2     sworn, your answers to my questions will be subject to the

3     penalties of perjury or of making a false statement if you do

4     not answer truthfully?

5          THE DEFENDANT:  Yes.

6          THE COURT:  That means that if you answer falsely

7     to any of my questions, the government can prosecute you for

8     perjury and can use any of your false statements today during

9     that prosecution.  Do you understand?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Okay.  I want you to understand that

12     this is Judge Weinstein's case.  He is the judge who will

13     sentence you and make the ultimate decision as to whether to

14     accept your waiver of indictment and guilty plea.

15          If you wish, you have the absolute right to plead

16     guilty in front of him and there will be no prejudice to you.

17     Alternatively, if you wish, I will listen to your plea.

18          A transcript of this proceeding will be made by the

19     court reporter and Judge Weinstein will then review the

20     transcript in connection with rendering your sentence.  Do

21     you understand?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you wish to give up your right to

24     plead guilty in front of Judge Weinstein and instead proceed

25     in front of me?

4

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  Are you making this decision

3    voluntarily and of your own free will?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  Has anyone threatened you or have any

6    promises been made to you to induce you to plead guilty in

7    front of me as opposed to pleading guilty in front of Judge

8    Weinstein?

9           THE DEFENDANT:  No, sir.

10           THE COURT:  Okay.  In connection with that, I've

11    been given the order of referral from Judge Weinstein.  It

12    bears a number of signatures, one of which is next to a

13    yellow arrow which I'm holding up.  Is that your signature?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Okay.  Before listening to your plea,

16    there are a number of questions, as I said, that I have to

17    ask you to make sure that your plea is valid.  And if you

18    don't understand any of my questions, please let me know and

19    I'll re-word them.  What's your full name?

20           THE DEFENDANT:  Darnell Washington.

21           THE COURT:  How old are you?

22           THE DEFENDANT:  25.

23           THE COURT:  What schooling or education have you

24    had?

25           THE DEFENDANT:  High school.

5

```
1                    THE COURT:  Graduate?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  Okay.  Are you under the care of a

4       doctor or a psychiatrist for any reason?

5                    THE DEFENDANT:  Yes.

6                    THE COURT:  What -- what -- what is the reason?

7                    THE DEFENDANT:  Psychiatry.

8                    THE COURT:  Okay.  Have you been prescribed any

9       medications for your psychiatric condition?

10                    THE DEFENDANT:  Yes.

11                    THE COURT:  What medications are you taking?

12                    THE DEFENDANT:  I'm on Depacote and I'm on Remeron.

13                    THE COURT:  All right.  Do those medications affect

14       your ability to understand what's going on right now?

15                    THE DEFENDANT:  No.

16                    THE COURT:  Is your mind clear right now?

17                    THE DEFENDANT:  Yes.

18                    THE COURT:  You understand what we're talking

19       about?

20                    THE DEFENDANT:  Yes, sir.

21                    THE COURT:  Okay.  In the past 24 hours, have you

22       taken any drugs, alcohol or medicines or pills other than

23       what you've testified taking?

24                    THE DEFENDANT:  No.

25                    THE COURT:  Have you ever been hospitalized or
```

6

1      treated for narcotic addiction, alcoholism or mental or

2      emotional problems?

3                    THE DEFENDANT:  Mental.

4                    THE COURT:  Excuse me?

5                    THE DEFENDANT:  Mental problems.

6                    THE COURT:  All right.  When was that?

7                    THE DEFENDANT:  I don't remember the date.  Last

8      year, maybe.  I'm not sure.

9                    THE COURT:  Prior to your arrest?

10                   THE DEFENDANT:  Yes.

11                   THE COURT:  Okay.  And have you been diagnosed with

12     a specific psychiatric condition?

13                   THE DEFENDANT:  Borderline personality disorder.

14     That's it.

15                   THE COURT:  Okay.

16                   THE DEFENDANT:  And depression and anxiety also.

17                   THE COURT:  Okay.  Thank you.

18                   Mr. Washington, as a defendant in a criminal case,

19     you have the right to be represented by an attorney at every

20     stage of the proceedings and Ms. Hoyes, who is seated to your

21     right, has been appointed to represent you in this case.

22                   If you want to talk to her about anything that

23     we're talking about, you have any questions that you want to

24     ask her, let me know.  We'll take a break in the proceedings

25     and you can confer with her.  Do you understand?

7

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  Have you had enough time to talk to her

3    about your case and the decision to enter a guilty plea?

4        THE DEFENDANT:  Yes.

5        THE COURT:  Have you had any difficulty

6    communicating with her?

7        THE DEFENDANT:  No.

8        THE COURT:  Are you satisfied with the

9    representation and advice that she has provided to you?

10       THE DEFENDANT:  Yes, sir.

11       THE COURT:  Okay.  Ms. Hoyes, you had these

12   conversations with Mr. Washington?

13       MS. HOYES:  Yes, I have, Your Honor.

14       THE COURT:  Have you had enough time to talk to him

15   about his case and the decision to enter a guilty plea?

16       MS. HOYES:  Yes, I have.

17       THE COURT:  Are you satisfied that he understands

18   the rights that he's giving up by waiving indictment and

19   pleading guilty?

20       MS. HOYES:  I am.

21       THE COURT:  Is he capable of understanding the

22   nature of these proceedings?

23       MS. HOYES:  Yes, he is.

24       THE COURT:  Do you have any doubt at all about his

25   competence to plead guilty at this time?

8

1        MS. HOYES:  I do not.

2        THE COURT:  Did you discuss with him the maximum

3    and minimum sentences and fines that could be imposed upon

4    him --

5        MS. HOYES:  Yes.

6        THE COURT:  -- if he pleads guilty?

7        MS. HOYES:  I did.

8        THE COURT:  All right.  And did you explain to him

9    how the sentencing guidelines operate and how those

10   guidelines affect his case?

11       MS. HOYES:  I did.

12       THE COURT:  Okay.  Mr. Washington, the government

13   has put before me a superceding information charging you with

14   two crimes.  Count 1 is sexual exploitation of a child and

15   Count 2 is possession of child pornography.  Have you seen a

16   copy of the superceding information?

17       THE DEFENDANT:  Yes, I have.

18       THE COURT:  And you've discussed the charges with

19   Ms. Hoyes?

20       THE DEFENDANT:  Yes, I have.

21       THE COURT:  And do you understand the charges

22   pending against you?

23       THE DEFENDANT:  Yes, I do.

24       THE COURT:  In order to secure a conviction against

25   you for these crimes, the government would have to prove

1    beyond a reasonable doubt the following elements.

2         On the sexual exploitation of a child, the

3    government would have to prove that you employed, used,

4    persuaded, induced, enticed or coerced an individual to

5    engage in sexually explicit conduct for the purpose of

6    producing a visual depiction of such conduct, that the

7    individual was a minor at the time and that the depiction was

8    produced using materials that had been mailed, shipped or

9    transported in interstate or foreign commerce.

10        To prove -- or to sustain a conviction against you

11   for possession of child pornography, the government would

12   have to prove the following beyond a reasonable doubt.  That

13   you knowingly possessed a visual depiction, that the visual

14   depiction was transported in interstate or foreign commerce

15   or produced using materials which had been shipped or

16   transported by any means, including by computer or by

17   Internet.

18        Third, that the production of the visual depiction

19   involved the use of a minor engaged in sexually explicit

20   conduct and portrays that minor engaged in that conduct, and

21   fourth, that you knew that the production of the visual

22   depiction involved the use of a minor engaging in sexually

23   explicit conduct and portrayed a minor engaging in that

24   conduct.  Do you understand the elements of those crimes?

25        THE DEFENDANT:  Yes, I do.

1           THE COURT:  Okay.  Now Mr. Washington, the

2    government can't simply come into court and proceed on a

3    criminal case by way of an information.  You have the right

4    under the Constitution and laws of the United States to have

5    evidence presented to a grand jury of at least 16 and not

6    more than 23 people and have that grand jury make a

7    determination of whether there was probable cause to believe

8    you committed the crime before the government could proceed

9    with its case.

10           If the government would fail to convince a majority

11   of the grand jurors that there was probable cause, no

12   indictment would be issued against you and no charges would

13   go forward.

14           I understand that you wish to waive your right to

15   be indicted by a grand jury and proceed instead on the

16   superceding information that's been filed.  Is that correct?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  Have you discussed with your attorney

19   the matter of waiving your right to be indicted by a grand

20   jury?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Do you understand your right to be

23   indicted by a grand jury?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Ms. Hoyes, are you satisfied that Mr.

1    Washington understands what it is to waive indictment?

2           MS. HOYES:  Yes, I am.

3           THE COURT:  Do you see any reason why he should not

4    waive indictment?

5           MS. HOYES:  I do not.

6           THE COURT:  Mr. Washington, has anyone threatened,

7    forced or pressured you to waive your right to be indicted by

8    a grand jury?

9           THE DEFENDANT:  No.

10          THE COURT:  Do you, in fact, wish to waive your

11    right to be indicted by a grand jury?

12          THE DEFENDANT:  Yes.

13          THE COURT:  I understand that you've signed already

14    the waiver of indictment form and I'll ask you -- I'm holding

15    it up and there's a signature next to a yellow arrow.  Is

16    that yours?

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right.  I find that Mr.

19    Washington's waiver of his right to be indicted by a grand

20    jury is knowingly and voluntarily made, and I have signed the

21    waiver form.

22          What I want to do now is go over the rights that

23    you have and the rights that you'll be giving up if you plead

24    guilty.

25          First of all, you have the right to plead not

12

1    guilty.  Do you understand that?

2            THE DEFENDANT:  Yes.

3            THE COURT:  What that means is that you have a

4    choice in this matter and it's up to you to decide what to

5    do -- not your lawyer or anyone else.

6            Even if you are guilty, you can proceed to trial by

7    persisting in a not guilty plea, as you apparently wish to

8    do.  Excuse me.  Even if you are guilty, you have the right

9    to plead not guilty and go to trial.  Do you understand that?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Okay.  If you did plead not guilty, you

12   would have the right under the Constitution and laws of the

13   United States to a speedy trial.  A trial would be before a

14   jury.  The trial would be in public.  You would be

15   represented by an attorney at the trial.  Do you understand

16   that?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Okay.  At trial, you'd be presumed to

19   be innocent and that means that you wouldn't have to prove

20   that you're innocent.

21           As I explained earlier, it's the government's

22   burden to prove your guilt beyond a reasonable doubt.  And if

23   you had a trial and the government would fail to meet that

24   burden of proof, the jury would have to find you not guilty.

25   Do you understand?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  And that's why sometimes juries

3     return verdicts of not guilty, even though they believe the

4     defendant on trial probably committed the crime charged.

5     When a jury comes back with a not guilty verdict, they're not

6     saying they believe the defendant's innocent.

7          They're merely saying they're not convinced beyond

8     a reasonable doubt that he is guilty.  Do you understand the

9     difference between those two things?  On the one hand, the

10    jury finding you not guilty and on the other hand, the jury

11    saying they're not convinced beyond a reasonable doubt that

12    you are guilty.  I'm confusing things, aren't I?

13          THE DEFENDANT:  Yes.

14          THE COURT:  I apologize.  I said -- I said this

15    many times that it sometimes is unclear.  When you go to

16    trial, you're presumed innocent.

17          THE DEFENDANT:  Right.

18          THE COURT:  And it's the government that has to

19    prove that you're guilty.  And they have to prove that guilt

20    beyond a reasonable doubt.  So after a trial, juries come

21    back with a verdict of guilty.  Sometimes.  When they do

22    that, they're not saying you're innocent.  All right?  They

23    may think you probably committed the crime, but the

24    government didn't satisfy its burden of proof to prove your

25    guilty beyond a reasonable doubt.  So that's why they come

1  back with the not-guilty verdict.  That's why I'm asking you

2  do you understand the difference between those two things?

3         THE DEFENDANT:  Yes.

4         THE COURT:  Okay.  I'm sorry I confused it for you.

5  I confused it for myself, too, there for a second.

6         When you have a trial, you have the right to have

7  the government come into court and bring its witnesses to

8  testify in your presence.  Those witnesses testify under

9  oath.  Your lawyer has the right to cross-examine them.  Your

10  lawyer can object to the evidence that is offered by the

11  government, and the lawyer can also offer evidence on your

12  behalf.  Do you understand?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Okay.  Your lawyer also has the right

15  to subpoena witnesses or compel them to come into court and

16  testify on your case.  Do you understand that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  If you did go to trial, you would have

19  the right under the Constitution and laws of the United

20  States to testify if you wanted to.

21         On the other hand, you couldn't be forced to

22  testify if you didn't want to.  Under our legal system, no

23  one can be forced to testify against himself and if you had a

24  trial and did not testify, Judge Weinstein would tell the

25  jury that they couldn't hold that against you because it's

1    your Constitutional right not to testify against yourself.

2    Do you understand?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Okay.  If instead of going to trial,

5    you plead guilty to the crime that's charged and if Judge

6    Weinstein accepts that plea, you'll be giving up your

7    Constitutional right to a trial and all the other rights I've

8    just discussed.  There will be no trial in this case.  The

9    Court will simply enter judgment of guilty based upon your

10   plea.  Do you understand that?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Now if you do plead guilty, you're

13   going to have to tell me why you are guilty.  I may ask you

14   some questions to figure it out and by doing that, you're

15   giving up your right not to testify against yourself.  Do you

16   understand that?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Okay.  And also if you enter a guilty

19   plea today and you admit the criminal conduct that's alleged

20   in the superceding information, and if Judge Weinstein

21   accepts the plea, you'll be giving up your right to appeal to

22   a higher court on whether you committed the crime.  That will

23   be over by your guilty plea.  Do you understand?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Okay.  Are you willing to give up your

1    right to a trial and all the other rights I've just

2    discussed?

3                THE DEFENDANT:  Yes.

4                THE COURT:  Okay.  I understand that you've entered

5    into a plea agreement with the government.

6                THE DEFENDANT:  Yes.

7                THE COURT:  We've marked the plea agreement as

8    Court Exhibit 1 and there a number of signatures on the last

9    page, again one of which is next to the yellow arrow.  Is

10   that yours?

11               THE DEFENDANT:  Yes.

12               THE COURT:  Okay.  Mr. Washington, did you read

13   this plea agreement carefully before you signed it?

14               THE DEFENDANT:  Yes.

15               THE COURT:  Did you discuss it with your attorneys?

16               THE DEFENDANT:  Yes.

17               THE COURT:  Do you believe you understand what's

18   contained in this plea agreement?

19               THE DEFENDANT:  Yes.

20               THE COURT:  Okay.  Mr. Paulsen, does the plea

21   agreement contain the entirety of any understanding the U.S.

22   Attorney's Office has with Mr. Washington concerning these

23   charges?

24               MR. PAULSEN:  It does, Your Honor.

25               THE COURT:  Is that your understanding as well, Ms.

17

1   Hoyes?

2           MS. HOYES:  Yes, Your Honor.

3           THE COURT:  I take it that you've reviewed the plea

4   agreement with Mr. Washington?

5           MS. HOYES:  Yes, I have.

6           THE COURT:  Are you satisfied that he understands

7   what's contained in it?

8           MS. HOYES:  Yes, I am.

9           THE COURT:  Okay.  Mr. Washington, is there

10  anything in the plea agreement that's not clear to you that

11  you would like me to explain to you now?

12          THE DEFENDANT:  No.  I'm good.

13          THE COURT:  Okay.  Other than the promises that are

14  contained in the plea agreement, has anyone made other

15  promises to you that's causing you to plead guilty?

16          THE DEFENDANT:  No.

17          THE COURT:  All right.  I want to go over carefully

18  what the penalties are for the crime to which you may plead

19  guilty -- or the crimes, I should say.

20          Count 1, sexual exploitation of a child, carries a

21  maximum term of imprisonment of 30 years, a minimum term of

22  imprisonment of zero -- excuse me -- 15 years, a minimum term

23  of supervised release of five years and a maximum term of

24  supervised release of life.

25          Supervised release is a period of time after you

1    get out of prison where you have to live by certain terms and

2    conditions, and if you violate those terms and conditions,

3    you can be sentenced for up to three years without credit for

4    time you had previously spent in prison or time you spent

5    previously on post-release supervision.

6             And if you commit on supervised release certain

7    enumerated offenses that are listed in the plea agreement,

8    you can be sentenced to five years -- a minimum of five years

9    and up to the maximum term for those enumerated crimes.

10            There's a maximum fine of $250,000 maximum.  There

11   is mandatory restitution that's set forth in paragraphs 12

12   through 16 of the plea agreement.  There is a $100 special

13   assessment.

14            There is also criminal forfeiture which is listed

15   in paragraphs 6 through 10 of the agreement and you must also

16   register as a sex offender pursuant to the Sex Offender

17   Registration and Notification Act.

18            The possession of child pornography crime, Count 2,

19   carries a maximum term of imprisonment of 20 years, a minimum

20   term of imprisonment of ten years, similar minimum and

21   maximum terms of supervised release of five years and life,

22   maximum fine of $250,000, similar restitution and special

23   assessments and also criminal forfeiture and registration as

24   a sex offender.  Do you understand all of that?

25            THE DEFENDANT:  Yes.

1          THE COURT:  Okay.

2      (Pause.)

3          THE COURT:  Now I want to briefly go over the

4  sentencing analysis that Judge Weinstein will go through to

5  determine what sentence to give you.  He first has to

6  consider the advisory sentencing guidelines issued by the

7  United States Sentencing Commission.

8          Those are guidelines that judges look to to

9  determine what a reasonable sentence is in a criminal case.

10  Again, they're advisory.  They're not mandatory, but they're

11  an important consideration in sentencing and Judge Weinstein

12  will take them into account as one factor in determining what

13  sentence to give you.

14          I asked Ms. Hoyes if she has gone over the

15  sentencing guidelines, what they are and how they affect your

16  case with you, and she said yes, she had discussed that with

17  you.  Is that correct?

18          THE DEFENDANT:  Yes.

19          THE COURT:  All right.  The second step is for

20  Judge Weinstein to consider whether there are any factors

21  present that would allow him to depart from the guidelines,

22  either upwardly or downwardly, and he also has to consider

23  the factors set forth in the sentencing statute against all

24  the facts and circumstances of your case, and it may be that

25  what's called a non-guidelines sentence applies.

20

1          I understand from the plea agreement that

2     considering all of the adjustments to the sentencing

3     guidelines, that you are looking at a sentencing guideline

4     range of 360 to 600 months.  Is that correct, Mr. Paulsen?

5          MR. PAULSEN:  It is, Your Honor.

6          THE COURT:  Okay.  Ms. Hoyes, have you done your

7     own analysis of the guidelines?

8          MS. HOYES:  We've reviewed the guidelines and the

9     enhance -- the various enhancements that the government has

10    included here.

11         THE COURT:  Do you have any different calculation

12    that the Court should be aware of at this point?

13         MS. HOYES:  Not at this time, Your Honor.

14         THE COURT:  Okay.  You are going to be sentenced,

15    Mr. Washington, on January 15th at 10 a.m.  Prior to that

16    date, Judge Weinstein will get a pre-sentence report from the

17    Probation Department.

18         It will have facts in it about you and the crime to

19    which you have pled guilty and it will have a recommendation

20    on what the guideline calculation is.  Your attorney will

21    have the opportunity to review the pre-sentence report and to

22    challenge the facts contained in it.

23         One important thing for you to understand is that

24    regardless of what this guideline calculation is in the plea

25    agreement that we've talked about and regardless of what the

21

1      Probation Department argues is a proper guideline

2      calculation, Judge Weinstein will have to make his own

3      independent determination as to what the guidelines provide

4      in your case, considering the statutory minimums and

5      maximums, and he will come up with your sentence.  It's up to

6      him.  He listens to what everyone has to say, considers all

7      the arguments, but ultimately it's his decision.  Do you

8      understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Okay.  The last thing I you to

11     understand about sentencing is that we don't have a parole

12     board or a parole commission in the federal system so

13     whatever sentence you do get from Judge Weinstein will be

14     very close to the actual amount of time you spend in prison

15     because you won't be able to write to a parole board to let

16     you out early because there is no such thing.  Do you

17     understand?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Okay.  Do you have any questions at

20     this point that you want to ask me about anything related to

21     this case --

22             THE DEFENDANT:  No.

23             THE COURT:  -- that's not clear to you?

24             THE COURT:  Okay.  Are you ready to plead?

25             THE DEFENDANT:  Yes.

22

1          THE COURT:  Ms. Hoyes, do you know of any reason

2    why Mr. Washington should not plead guilty?

3          MS. HOYES:  No, I don't, Your Honor.

4          THE COURT:  Do you know of any legal defense to

5    these charges?

6          MS. HOYES:  I do not.

7          THE COURT:  Okay.  With respect to Count 1, sexual

8    exploitation of a child, Mr. Washington, how do you plead?

9    Guilty or not guilty?

10          THE DEFENDANT:  Guilty.

11          THE COURT:  With respect to Count 2, possession of

12    child pornography, how do you plead?  Guilty or not guilty?

13          THE DEFENDANT:  Guilty.

14          THE COURT:  Are you making these guilty pleas

15    voluntarily and of your own free will?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Has anyone threatened, forced or

18    pressured you to plead guilty?

19          THE DEFENDANT:  No.

20          THE COURT:  Other than the plea agreement, has

21    anyone promises to you that is causing you to plead guilty?

22          THE DEFENDANT:  No.

23          THE COURT:  Has anyone promised you what sentence

24    you'll receive from Judge Weinstein if you plead guilty?

25          THE DEFENDANT:  No.

1           THE COURT:  Okay.  Why don't you tell me why you're

2      guilty of sexual exploitation of a child and possession of

3      child pornography?

4           MR. MORRIS:  Your Honor --

5           MS. HOYES:  Your Honor, if it's --

6           MR. MORRIS:  May I ask my -- our client some

7      questions?

8           THE COURT:  Any objection?

9           MR. PAULSEN:  No objection, Your Honor.

10          THE COURT:  Go ahead.

11          MR. MORRIS:  Mr. Washington, the Winter and Spring

12     of 2009, did you try to persuade at least one minor to engage

13     in sexually explicit conduct?

14          THE DEFENDANT:  Yes.

15          MR. MORRIS:  And did you do that for the purpose of

16     producing a visual depiction of that conduct?

17          THE DEFENDANT:  Yes.

18          MR. MORRIS:  Did you do that in Queens --

19          THE DEFENDANT:  Yes.

20          MR. MORRIS:  -- New York?  And did you know what

21     you were doing?

22          THE DEFENDANT:  Yes.

23          MR. MORRIS:  And you undertook your actions

24     voluntarily?

25          THE DEFENDANT:  Yes.

24

1          MR. MORRIS:  And you produced a visual depiction in

2     computer files on a BlackBerry phone?

3          THE DEFENDANT:  Yes.

4          MR. MORRIS:  Your Honor, we have no objection to

5     the government's proffer as to -- or expected proffer as to

6     the interstate commerce element.

7          THE COURT:  Okay.  And Mr. Washington, the person

8     was -- you knew the person was a minor at the time?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Okay.  Mr. Paulsen, do you think that's

11     sufficient?

12          MR. PAULSEN:  Your Honor, I just have one

13     clarifying question.  By a sexually explicit conduct, could

14     defense counsel inquire briefly into the nature of the

15     pictures just so it satisfies the statute that the photos

16     were a lascivious display of the genitals?

17          MR. MORRIS:  Did the sexually explicit conduct

18     include explicit display of genitals?

19          THE DEFENDANT:  Yes.

20          MR. PAULSEN:  The government is satisfied.

21          THE COURT:  Okay.  And you have a proffer to make?

22          MR. PAULSEN:  I'm sorry, Your Honor?

23          THE COURT:  You have a proffer to make about --

24          MR. PAULSEN:  Oh, yes, Your Honor.  The government

25     asks that the defense stipulate that the item that was used

1    to make these photographs -- a BlackBerry mobile phone -- is

2    an item that is moved -- that has been mailed, shipped or

3    transported in interstate or foreign commerce.

4              MR. MORRIS:  We have no objection.

5              THE COURT:  Okay.

6              MR. PAULSEN:  Thank you, Your Honor.

7              THE COURT:  Do you think that's enough, Ms. Hoyes?

8              MS. HOYES:  Yes, Your Honor.

9              THE COURT:  Okay.  I do as well.

10             Based on the information given to me, I find

11   that Mr. Washington is acting knowingly and voluntarily, that

12   he understands the charges pending against him, that he

13   understands his rights as a defendant in a criminal case,

14   that he appreciates the consequences of his waiver of

15   indictment and his guilty plea.  It's also a fact -- there's

16   also a factual basis for the plea to both counts.

17             MS. HOYES:  Your Honor, if I may interrupt.  I

18   think actually we require a further allocution for Count 2 as

19   that involves a separate date and a separate item in

20   interstate commerce.  There are actually two --

21             THE COURT:  Oh, I didn't know it was a different

22   date.

23             MS. HOYES:  -- two separate events.

24             THE COURT:  I'm sorry.  I apologize.

25             MS. HOYES:  I apologize.

1           THE COURT:  I thought it was one of -- it was part

2     of the --

3           MS. HOYES:  I'm sorry.

4           THE COURT:  -- part of the same.

5           MS. HOYES:  So I think Mr. Morris will ask some

6     questions --

7           THE COURT:  Okay.  I apologize.

8           MS. HOYES:  -- with respect to Count 2.

9           THE COURT:  Go ahead, Mr. Morris.

10          MR. MORRIS:  On February 22 or approximately that

11    date of 2013, did you view images on a computer?

12          THE DEFENDANT:  Yes.

13          MR. MORRIS:  And were those images of minors?

14          THE DEFENDANT:  Yes.

15          MR. MORRIS:  And were those images of minors

16    engaged in sexually explicit conduct?

17          THE DEFENDANT:  Yes.

18          MR. MORRIS:  And again, we do not object to the

19    government's expected proffer as the interstate commerce

20    element.

21          MR. PAULSEN:  Yes, Your Honor.  There's actually

22    two -- two issues from the government.

23          First off, the government would ask that the

24    defense stipulate that in viewing these -- viewing and

25    possessing these images, he used a computer and the Internet

1      to obtain these images.

2              MR. MORRIS:  Did you use a computer and the

3      Internet?

4              THE DEFENDANT:  Yes.

5              MR. MORRIS:  And was this in Queens, New York?

6              THE DEFENDANT:  Yes.

7              MR. PAULSEN:  And that this for possession of these

8      images, not just viewing of them.

9              MR. MORRIS:  This was for possession of the images?

10             THE DEFENDANT:  Yes.

11             MR. PAULSEN:  Your Honor, there is one other

12     stipulation.  The government would ask that the defendant

13     stipulate that these -- among these images that he possessed

14     were images of actual children, not simulated or individuals

15     who would appear to be children but were not.

16             MR. MORRIS:  Did you believe that the images that

17     you were viewing were of actual children?

18             THE DEFENDANT:  Yes.

19             MR. PAULSEN:  Your Honor, I believe the

20     government's content.

21             MS. HOYES:  I think that's sufficient, Your Honor.

22             THE COURT:  Yes.  Again, so do I.  There's a

23     factual basis for Count 2 now.  It's therefore my

24     recommendation to Judge Weinstein that he accept Mr.

25     Washington's guilty plea to both Counts 1 and 2.  Anything

28

1    else?

2           MR. PAULSEN:  Nothing from the government, Your

3    Honor.

4           MS. HOYES:  No.

5           MR. PAULSEN:  Excuse me.

6           MS. HOYES:  Nothing further from the defense.

7           THE COURT:  All right.  Thank you.

8           MR. PAULSEN:  Thank you, Your Honor.

9        (Proceedings concluded at 3:47 p.m.)

10       I, CHRISTINE FIORE, court-approved transcriber and

11   certified electronic reporter and transcriber, certify that

12   the foregoing is a correct transcript from the official

13   electronic sound recording of the proceedings in the above-

14   entitled matter.

15

16   *Christine Fiore*

17   _____          November 12, 2014

18       Christine Fiore, CERT

19

20

21

22

23