FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 2 5 2015 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

– against –

D.W.,

　　　　　　　　　Defendant.

**ORDER**

13-CR-0173

**JACK B. WEINSTEIN, Senior United States District Judge:**

**Table of Contents**

I.   Introduction ................................................................................................................1

II.  Issues for Consideration at Evidentiary Hearing................................................5

III.  Preliminary Research.............................................................................................7

## I.    Introduction

This order should be written with tears. For conduct between 2009 and 2013, when defendant was between the ages twenty and twenty-four, he is facing a fifteen-year mandatory minimum sentence of incarceration. The charges are sexual exploitation of a child and possession of child pornography. An evidentiary sentencing hearing has been ordered for the reasons indicated below. Protecting both the public and defendant present serious concerns.

At five, defendant exhibited symptoms of a child who had been exposed to illegal drugs as a fetus. His mental development was poor. He habitually spread feces on his face and in his hair.

Removed by New York City child welfare services from the custody of his birth parents because of their neglect of him and his siblings, he was placed in a foster home. There, he

became a target for rape. He endured digital anal penetration by his foster-father, and insertion of his foster-brother's penis in his mouth. His next foster-father inflicted penile rape "over and over."

At age nine, he was adopted. Here, he was free of abuse. But the damage sustained in his early years could not be eradicated.

Identified as learning disabled, he was enrolled in a special education program. He did not receive a regular high school diploma when he graduated in 2007. His post-secondary education opportunities, employability, and earning potential were limited by his truncated education.

During adolescence, defendant repeatedly viewed child pornography. In 2009, at age twenty, he pled guilty to two counts of sexual abuse and one count of endangering the welfare of a minor. Conviction was premised on defendant's admission that he had given three young boys "wedgies," a practice that involves pulling underwear up between buttocks. He showed child pornography to one of the boys.

Incarcerated for three years, defendant became the rape victim of fellow prisoners. The first time he was raped in prison, he was violated by a single man. The second time, he was penetrated by "several."

He was released from prison in 2012 deeply disturbed. Prevented by law from living with his adoptive mother because a daycare center had recently opened near her home, defendant moved to the Charles H. Gay Shelter for Men on Randall's Island. He was diagnosed with borderline personality disorder, severe depression, agoraphobia, and post-traumatic stress disorder. Psychotropic drug prescriptions and counseling did not rid him of these medical conditions and continued viewing of child pornography.

2

On February 22, 2013, at age twenty-four, defendant was arrested by the Federal Bureau of Investigation. On the date of his arrest, he admitted to possession of, and receiving and distributing, child pornography by computer.

A five-count indictment was filed on March 15, 2013. It included four counts for distribution and one count for possession of child pornography.

When interviewed in September of 2013, defendant informed a sexual psychologist: "[A] lot of [pornographic] stuff I watched[] is stuff that happened to me. I don't know what drove me to go down this road, but it seemed like when I saw kids doing it to each other it wasn't rape, it wasn't forced." Defendant's examining psychologist indicated he was treatable:

> The defendant undoubtedly is one of the saddest cases of neglect that I have seen. Through absolutely no fault of his own, he was repeatedly subjected to every manner of maltreatment, from birth through adolescence. . . .  [He] is not, by any means, a "lost cause." Far from it. In my opinion, . . . [he] is highly treatable.

Assessment by a government expert led to a more skeptical conclusion:

> [W]hile there is little doubt that [the defendant's] actual intellectual functioning is below average . . ., the true extent of his psychiatric symptoms and intellectual limitations cannot be accurately gauged in the present evaluation due to the high likelihood of deliberate exaggeration.

Lengthy plea negotiations and voluminous discovery resulted in the adjournment of two trial dates. A superseding indictment was filed on August 28, 2014, charging defendant additionally with receipt of child pornography.

On September 22, 2014, after defendant had been examined by a number of experts, defense counsel advised the court and the government that an insanity defense would be pursued. Three weeks later, defendant waived his right to be prosecuted by indictment, consenting to

prosecution by information. The superseding information, filed on the same day, charged

defendant with one count of sexual exploitation of a child and possession of child pornography:

> **Count 1**:
> SEXUAL EXPLOITATION OF A CHILD
> 18 U.S.C. §§ 2251(a) and (e)/ Class B felony
> 15 years to 30 years imprisonment/$250,000.00 fine
>
> **Count 2**:
> POSSESSION OF CHILD PORNOGRAPHY
> 18 U.S.C. § 2252(a)(4)(b), 18 § U.S.C. 2252(b)(2)/Class C felony
> 10 years to 20 years imprisonment/$250,000.00 fine

Despite being advised that a fifteen-year mandatory minimum sentence would necessarily

be imposed as a result of a plea, defendant pled guilty to both counts.

On June 11, 2015, a sentencing hearing was conducted by the court. The allocution, as

well as the appearance of defendant, suggested that he was seriously troubled, exceptionally

passive, and deeply depressed.

*Sua sponte*, the court raised issues of: (1) defendant's capacity to understand the

implications of his decision to plead guilty, and (2) whether sentencing him to a fifteen-year

mandatory minimum term in prison would constitute cruel and unusual punishment in violation

of the Eighth Amendment to the United States Constitution.

The sentencing hearing was adjourned. The parties were directed to brief (1) the issue of

defendant's capacity to plead, and (2) whether sentencing defendant to incarceration in a non-

therapy based environment amounted to cruel and unusual punishment, effectively rendering the

mandatory minimum, as applied to him, unconstitutional. An evidentiary hearing on these issues

is ordered for August 3, 2015 at 10:30 a.m.

## II.     Issues for Consideration at Evidentiary Hearing

The following five issues shall be addressed at the evidentiary hearing:

*First*, why did this defendant decide to plead when that would necessarily result in incarceration for at least fifteen years in lieu of exercising his constitutional right to a jury trial? Counsel were aware that an adverse jury verdict would have resulted in the same sentence as would a plea.

*Second*, on June 11, 2015, as demonstrated by a video recording, the court observed defendant's passivity and depression. In light of these observations, and any other relevant information, a withdrawal of defendant's guilty plea will be considered at the hearing. The issue is whether the defendant is capable of responsibly forfeiting his right to a trial.

*Third*, whether sentencing this defendant – who has been raped multiple times – to the statutory minimum sentence of fifteen years violates his right to be free from cruel and unusual punishment.

The parties should inform the court of what protections or treatment are available, or are likely to be made available, to defendant in prison under a fifteen year sentence.

Should the court take into account that protecting the defendant against sexual attacks may require solitary confinement? As Supreme Court Justice Kennedy has reminded us:

> The human toll wrought by extended terms of isolation long has been understood, and questioned . . . .
>
> One hundred and twenty-five years ago, this Court recognized that, even for prisoners sentenced to death, *solitary confinement bears a further terror* and peculiar mark of infamy. . . . A considerable number of prisoners fell, after even a short solitary confinement, into a semi-fatuous condition and others became violently insane; others, still, committed suicide.
>
> Yet despite scholarly discussion and some commentary from other sources, the condition in which prisoners are kept simply has not been a matter of sufficient public inquiry or interest. . . .

Sentencing judges, moreover, devote considerable time and thought to their task. There is no accepted mechanism, however, for them to take into account, when sentencing a defendant, whether the time in prison will or should be served in solitary. . . . Even if the law were to condone or permit this added punishment, so stark an outcome ought not to be the result of society's simple unawareness or indifference.

Too often, discussion in the legal academy and among practitioners and policymakers concentrates simply on the adjudication of guilt or innocence. Too easily ignored is the question of what comes next. Prisoners are shut away—out of sight, out of mind. It seems fair to suggest that, in decades past, the public may have assumed lawyers and judges were engaged in a careful assessment of correctional policies, while most lawyers and judges assumed these matters were for the policymakers and correctional experts.

There are indications of a new and growing awareness in the broader public of the subject of corrections and solitary confinement in particular. . . .

. . . In a case that presented the issue, *the judiciary may be required, within its proper jurisdiction and authority, to determine whether workable alternative systems for long-term confinement exist*, and, if so, whether a correctional system should be required to adopt them.

*Davis v. Ayala*, No. 13-1428, 2015 WL 2473373, at *20–21 (U.S. June 18, 2015) (Kennedy J., concurring) (emphasis added) (citations and internal quotation marks omitted).

*Fourth*, in the event the court finds that sentencing this defendant to prison for fifteen or more years violates his constitutional rights under the Eighth Amendment, what types of appropriate alternatives to incarceration are available? For example, should consideration be given to whether the prison authorities would place defendant in the residential sex offender treatment program such as the one at the Federal Medical Center Devens ("Devens"), an administrative security federal medical center with an adjacent minimum security satellite camp, located in Ayer, Massachusetts. The court may lack effective control of incarceration conditions through sentencing.

*Fifth*, what are the attendant risks posed by defendant if released into society before or after having completed a course of treatment, such as that at Devens, or a full term of incarceration of fifteen years followed by a lifetime of supervised release and other conditions – or other possible sentences?

## III.   Preliminary Research

To date, the court has preliminarily collected and studied the following materials on its own motion:

Secondary Sources

- Heather Ellis Cucolo & Michael L. Perlin, *Preventing Sex-Offender Recidivism Through Therapeutic Jurisprudence Approaches and Specialized Community Integration*, 22 Temp. Pol. & Civ. Rts. L. Rev. 1 (2012).

- Michelle S. Phelps, *Rehabilitation in the Punitive Era: The Gap Between Rhetoric and Reality in U.S. Prison Programs*, 45 Law & Soc'y Rev. 33 (2011).

- Donald H. Stone, *Confine is Fine: Have the Non-Dangerous Mentally-Ill Lost Their Right to Liberty? An Empirical Study to Unravel the Psychiatrist's Crystal Ball*, 20 Va. J. Soc. Pol'y & L. 323 (2011).

- Tess M. S. Neal & Carl B. Clements, *Prison Rape and Psychological Sequelae: A Call For Research*, 16 Psychol. Pub. Pol'y & L. 284 (2010).

- Katherine Robb, *What We Don't Know Might Hurt Us: Subjective Knowledge and the Eighth Amendment's Deliberate Indifference Standard for Sexual Abuse in Prisons*, 65 N.Y.U. Ann. Surv. Am. L. 705 (2010).

- Philip Ellenbogen, *Beyond the Border: A Comparative Look at Prison Rape in the United States and Canada*, 42 Colum. J.L. & Soc. Probs. 335 (2009).

- Nat'l Prison Rape Elimination Comm'n, *National Prison Rape Elimination Commission Report* (2009), *available at* https://www.ncjrs.gov/pdffiles1/226680.pdf. (last accessed June 25, 2015).

- Mary Ann Farkas, *Sex Offender Treatment: Reconciling Criminal Justice Priorities and Therapeutic Goals*, 21 Fed. Sent. R. 78 (2008).

- Mary Sigler, *By the Light of Virtue: Prison Rape and the Corruption of Character*, 91 Iowa L. Rev. 561 (2006).

- Stop Prisoner Rape (a/k/a Just Detention International), A Shadow Report to the U.N. Committee Against Torture, *In The Shadows: Sexual Violence in U.S. Detention Facilities* (2006), *available at* http://www.justdetention.org/pdf/in_the_shadows.pdf (last accessed June 25, 2015).

- Shara Abraham, *Male Rape in U.S. Prisons: Cruel and Unusual Punishment*, 9 No. 1 Hum. Rts. Brief 5 (2001).

- Robert W. Dumond, *Inmate Sexual Assault: The Plague That Persists*, The Prison Journal, Vol. 80 No. 4 (2000).

Case Law

- *Davis v. Ayala*, No. 13-1428, 2015 WL 2473373 (U.S. June 18, 2015).

- *Miller v. Alabama*, 132 S. Ct. 2455 (2012).

- *Farmer v. Brennan*, 511 U.S. 825 (1994).

- *Rhodes v. Chapman*, 452 U.S. 337 (1981).

- *Hutto v. Finney*, 98 S. Ct. 2565 (1978).

- *Robinson v. State of California*, 370 U.S. 660 (1962).

Materials listed above should be critiqued by the parties or their experts. Other materials for court study before sentence is imposed shall be suggested as appropriate.

Expert reports shall be exchanged pursuant to the Federal Rules. *See* Fed. R. Civ. P. 26.

Briefing of both relevant social science literature and case law shall be completed by July 27, 2015.

Amicus briefs may be submitted.

8

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date:   June 25, 2015
        Brooklyn, New York

9